IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL CHANDHOK,

    Plaintiff,

v.                                                        No. CIV 01-894 LFG/DJS

LEE GALLES OLDSMOBILE, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Lee Galles Oldsmobile, Inc.'s ("Lee Galles" or "Defendant") Motion for Summary Judgment, filed June 5, 2002. [Doc. 22.] Lee Galles requests dismissal, under Fed.R.Civ.P. 56, of Plaintiff Paul Chandhok's ("Chandhok") claims of race discrimination and breach of contract. The Motion and supporting brief, Chandhok's response and Lee Galles' reply were filed together as a package, in accord with the District's local rules. Oral argument is not necessary; the matter can be decided on the briefs. After careful consideration of the law and the parties' pleadings, along with attachments, the Court concludes that Lee Galles' motion should be granted in part and denied in part.

### Factual and Procedural Background

This case involves Chandhok's employment with Lee Galles as a salesman and assistant used vehicle manager. The undisputed facts are that Chandhok worked on and off for Lee Galles from about March 1992, until he was terminated in March 2001. Over the nine years, Chandhok left Lee

1

Galles to work at different car dealerships and was re-hired by Lee Galles four different times. As a car salesman for Lee Galles, he earned as much as $80,000 per year in 1998-1999. On May 1, 1999, Lee Galles promoted Chandhok to an assistant used car manager position. He was to continue selling cars for which he could earn commissions and bonuses, but was also guaranteed a salary of $2000 per month for performing "assistant used car managers duties." [Doc. B, attached to Chandhok's response.] On July 1, 2000, Chandhok was given a new pay plan, guaranteeing him a salary of $4000 per month, as assistant used car manager. Under the new plan, he no longer sold cars, but could earn a percentage of the used and new vehicle departments sales. [Ex. C, attached to Chandhok's response.] Chandhok made less money as an assistant manger than he had as a salesman.

On January 5, 2001, Lawton Davis, General Manager, informed Chandhok that he would be returning to his salesperson position. The reasons for the "demotion," according to Lee Galles, were Chandhok's poor performance and because the Used Vehicle Department no longer needed an assistant manager.

In January 2001, at about the same time Chandhok returned to sales, Mr. Davis hired his daughter, Noel Davis-Westlake, to work as Customer Relations Coordinator and Aftermarket Salesperson. Lee Galles contends that Ms. Davis-Westlake's position was non-managerial and completely unrelated to the assistant manager position Chandhok held. Chandhok alleges that Mr. Davis and others told him that Ms. Davis-Westlake was a manager and that Davis believed an "after market sales manager" would "beef up their gross."

After returning to Sales, it is uncontested that Chandhok refused to do certain jobs required of salespersons, began to show up late and leave early, and took offense at being included in meetings

for all salespeople. It also is undisputed that Mr. Blakley asked Chandhok if he would quit, and Chandhok responded that "according to his attorney," the dealership needed to let him go. On March 19, 2001, Mr. Blakley terminated Chandhok.

On July 3, 2001, Chandhok filed a complaint in state court for employment discrimination on the "basis of race and gender[1]," under Title VII; Lee Galles removed the case to federal court. Chandhok also brought a breach of contract claim based on the second pay plan guaranteeing him $4000 per month plus a percentage of the department's gross sales, and Lee Galles' failure to pay him the salary plus percentage. [Complaint at ¶¶ 21 and 22.] In addition, he claims that Lee Galles breached the contract by demoting him.

## Summary Judgment Standard

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

---

[1] Plaintiff provides neither argument nor support for a gender discrimination claim and, to the extent that he intended to assert such a claim, it is dismissed.

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

"The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to create a dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). Summary judgment is appropriate only if there not sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson, 477 U.S. at 249, 106 S. Ct. at 2511. Thus, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. The Court in considering a motion for summary judgment construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. United States v. Distefano, 279 F.3d 1241, 1243 (10th Cir. 2002).

### Discussion

## I. TITLE VII RACE DISCRIMINATION DEMOTION AND TERMINATION

Chandhok relies on indirect or circumstantial evidence to support his Title VII claim. Thus, the claim is analyzed under the three-step, burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000).

4

> [T]he plaintiff must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. Once the plaintiff has established a prima facie case, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

Id. (internal citations omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### A. *Chandhok's Prima Facie Case*

Chandhok may establish a prima facie case of unlawful demotion by showing that: (1) he belongs to a protected class; (2) he was adversely affected by the defendant's employment decision; (3) he was qualified for the position at issue; and (4) the job was not eliminated after his demotion. Jones v. Denver Post Corp., 203 F.3d 748, 752 (10th Cir. 2000). A prima facie case of unlawful termination requires a similar showing, the primary difference being that it is self evident that the employee is adversely affected when terminated. In addition to elements 1, 3, and 4, the plaintiff must show that despite his qualifications for the position, he was discharged, and that the job was not eliminated after his termination. Perry v. Woodward, 199 F.3d 1126, 1138 (10th Cir. 1999), *cert. denied,* 529 U.S. 1110, 120 S. Ct. 1964 (2000).

Here, Lee Galles argues primarily that Chandhok fails to satisfy the fourth prong of his prima facie case, i.e., that the position from which he was demoted and later terminated, was <u>not</u> eliminated. Lee Galles asserts that the position of assistant used car manager was eliminated after Chandhok's demotion and that it has not been filled. In addition, while Lee Galles concedes that Chandhok

5

belongs to a protected class, it challenges whether Plaintiff was qualified for the management position and whether the demotion constituted an adverse action since Chandhok made more money as a salesman.

The Tenth Circuit has stated that it "should now be obvious" that the "burden imposed on a plaintiff at the prima facie stage is 'not onerous.'" EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1197 (10th Cir. 2000) (internal citation omitted). Moreover, the court should not cut off the plaintiff's opportunity to show that the defendant's proffered reasons for the adverse action were pretextual. Ortiz v. Norton, 254 F.3d 889, 894-95 (10th Cir. 2001). "Short-circuiting the analysis at the prima facie stage frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual . . . ." Id. at 895. In analyzing plaintiff's proof of his prima facie case, the Court should bear in mind that "[t]he presumption arising under the first prong of McDonnell Douglas is a relatively weak inference that corresponds to the small amount of proof necessary to create it." EEOC v. Horizon/CMS, 220 F.3d at 1197 (internal citation omitted).

With respect to the demotion claim, Chandhok raises genuine issues of material fact as to whether he was qualified for the assistant used car manager since he held the position, whether characterized as part-time or full time, from May 1999 until January 2001. One and one half years in a position, and a promotion from half time to full time assistant manager belie any contention, at the prima facie stage, that he was not qualified for the job. Moreover, the Court agrees with Lee Galles that this examination should be made during the analysis of pretext.

In addition, the Court finds that Chandhok's return to salesman from assistant used car manager, could amount to an adverse action for purposes of the Title VII demotion claim. The Tenth Circuit liberally defines the phrase "adverse employment action." Sanchez v. Denver Pub. Sch., 164

F.3d 527, 532 (10th Cir. 1998). "Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a 'case-by-case approach.'" Id. On the other hand, the Court has held that "mere inconveniences or alterations of job responsibilities" might not amount to an adverse employment action. Id. Significant changes in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits are adverse actions for purposes of Title VII. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257 (1998). Here, Chandhok admits that he made more money as a salesman, but the amount of one's wages is not determinative. In sales, he no longer had any management responsibilities and could not earn a percentage of the overall sales. These changes are sufficiently significant to satisfy his prima facie showing.

With respect to the last element of his prima facie case, the Court recognizes that Lee Galles eliminated the position from which Chandhok was demoted and terminated, after he was demoted. The elimination of a position, however, "does not necessarily eviscerate a plaintiff's claim that her discharge was racially motivated." Perry, 199 F.3d at 1140 n. 10 (internal citation omitted); Pumpkin-Wilson v. Sheets, 1996 WL 731235 at *3 n. 2 (10th Cir. Dec. 20, 1996) (elimination of the position did not end the discrimination inquiry, because the elimination of a position for a racially motivated reason could support a discrimination claim) (internal citation omitted). Moreover, the prima facie case is a flexible standard that can be modified to accommodate different factual situations. Perry, 199 F.3d at 1140 n. 10. In addition, the inquiry concerning the elimination of a position may be better resolved during the analysis of pretext in some cases. *See* Silva v. NYC Transit Authority, 1999 WL 1288683 at *9 (E.D.N.Y. Nov. 17, 1999) (company reorganization resulted in the elimination of certain positions and the creation of different, but similar jobs; court

7

elected not to get "bogged down" in deciding whether the plaintiffs were "replaced" in any given instance and instead assumed the existence of a prima facie case to proceed to the "real issues" involving pretext).

This is not a case where the employer made a determination based on financial reasons or predictions that it needed to re-structure its business and then responded by carrying out some lay-offs. Instead, it appears that Lee Galles decided to demote Chandhok and then eliminate the one position he filled. Chandhok contends that the elimination of the position was a subterfuge in the sense that Lee Galles created another management position at the same time he was demoted, that was filled by a white female (Lawton Davis' daughter), and for which he allegedly was not allowed to apply. He also implies that some of the money used to fund his management salary was diverted to support Davis' daughter's new position.

Certainly, the Court can conceive of scenarios where an employer might demote or terminate an employee and then eliminate the position to cover up its unlawful motivation, in an attempt to defeat the prima facie case of discrimination. While there may not be evidence here to support that view, the Court must draw all inferences in favor of Chandhok in deciding the motion for summary judgment.

The Court also acknowledges that the elimination of a job may often constitute a legitimate non-discriminatory reason for an adverse employment action and that it is not the role of the court to review the propriety of business decisions. However, a court may review the propriety of a business decision when it is alleged that the decision was a pretext for unlawful conduct. In other words, certain types of position elimination should not be allowed to defeat the prima facie showing. "When an employer defends an employment discrimination case on the ground of position elimination,

8

the position may not, like a Dali painting, fade from one image to another . . ." Smith v. Morse & Co., Inc., 76 F.3d 413, 423 (1st Cir. 1996.) To allow an employer to eliminate a position for an improper illegal reason would be at odds with the goals of Title VII.

The Court recognizes that as part of a plaintiff's prima facie showing, he must demonstrate that the job from which he was discharged was not eliminated. Jones, 203 F.3d at 752. With this requirement in mind, Chandhok's prima facie showing in support of the unlawful demotion or termination claims is weak, but at this stage, sustainable. Thus, in accordance with Tenth Circuit precedent, and in examining the record in the light most favorable to Chandhok, the Court declines to short circuit the analysis at the prima facie stage. For the reasons stated, the Court concludes that Chandhok satisfied the minimal showing required to demonstrate a prima facie case of Title VII demotion or termination, and that there are genuine issues of material fact as to the reasons the position was eliminated.

### B. *Lee Galles' Proffered Reasons for its Employment Actions*

Lee Galles states that after the promotion to assistant used car manager, it became apparent that Chandhok was better suited to be a salesperson. Lee Galles specifically argues that Chandhok was "incompetent, undermined his supervisor, dragged down his department's sales figures, and failed to follow basic company policies." Finally, Chandhok earned less money as an assistant manager, and Lee Galles believed it was in his and the company's best interests for him to return to salesperson.

With respect to the termination decision, Lee Galles contends that Chandhok's job performance as a salesman suffered greatly after his demotion. He refused to do his job, began to show up late and leave early, and took offense at having to attend sales meetings.

Lee Galles has satisfied its burden in articulating legitimate non-discriminatory reasons for the decisions to demote and terminate Chandhok. The burden returns to Chandhok to demonstrate that there is a genuine issue of material fact as to whether Lee Galles' stated reasons for the employment decisions were pretextual or unworthy of belief.

### C. *Pretext*

If Chandhok presents evidence that Lee Galles proffered reasons for employment actions were pretextual, i.e., false or unworthy of belief, then Chandhok can defeat the motion for summary judgment and proceed to trial. Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995); Reeves, 530 U.S. at 147, 120 S.Ct. at 2109. Chandhok does not have to meet a "pretext-plus" standard requiring a showing that the articulated reason for the adverse employment action was false and that discrimination was the real reason. A showing of pretext, along with a prima facie case, is sufficient.

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination."

Reeves, 530 U.S. at 147, 120 S.Ct. at 2108 (internal citation omitted).

In Reeves, the Supreme Court further explained that proof that an employer's explanation for its actions is unworthy of belief can be quite persuasive evidence of discrimination. Id. at 147, 120 S.Ct. at 2108. This is true because the fact finder can infer from the falsity of the explanation that the real reason is a discriminatory in nature since the employer is in the best position to explain the reasons for its decision. Id. at 147-48, 120 S.Ct. at 2108-09. The Court, however, also recognized that in some circumstances, where no rational fact finder could conclude the action was

discriminatory, summary judgment in favor of the employer still would be appropriate. For example, if the record conclusively demonstrated, that other, nondiscriminatory reasons explained the employer's decision or if the plaintiff created only a weak fact issue as to the falsity of the employer's decision, and there was abundant undisputed evidence of no discrimination, then judgment should be granted for the defendant. Id. at 148, 120 S.Ct. at 2109.

Chandhok may establish pretext by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." Morgan v. Hilti, Inc., 108 F.3d 1319, 1321 (10th Cir. 1997) (internal citations omitted). Typically, the plaintiff shows pretext with evidence that the defendant's stated reason was false, and/or that the employer acted contrary to a written company policy or company practices. Kendrick, 220 F.3d at 1230. Pretext as been defined as "a lie, specifically a phony reason for some action." Russell v. Acme Evans Co., 51 F.3d 64, 68 (7th Cir. 1995). A plaintiff's speculation or conjecture, however, are insufficient to demonstrate pretext. Jones, 203 F.3d at 754. Moreover, the plaintiff's subjective evaluation of his own relative performance cannot forestall summary judgment. Id.

In this case, Chandhok's attempt to show pretext derives solely from his contention that Lee Galles' explanations for the demotion were unworthy of belief or false. While the record presents a close call, particularly due to Plaintiff's counsel's minimal discussion of the pertinent facts, the Court concludes that there is a genuine issue of material fact as to Lee Galles' explanation for its adverse employment actions.

### *1. Alleged Poor Performance:*

Specifically, the Court finds that Lee Galles' explanations for the demotion decision are unconvincing. For example, Lee Galles' attempt to distinguish Chandhok's job title in May 1999 as

11

"selling assistant manager" from his title in July as "assistant used vehicle manager is disputed by documentary evidence consisting of pay plans that Lee Galles prepared. [Exs. B and C to Plaintiff's response.] Both those pay plans identify Chandhok's position as Assistant Used Car/Vehicle Manager, and show that he was promoted to assistant used car manager beginning on May 1, 1999. This means that Chandhok was working as a manager for 1½ years before being demoted, supposedly for poor performance. Yet Lee Galles' memorandum in support of its motion argues that "[a]fter that promotion, it soon became apparent that Plaintiff was better suited for the job of salesman than assistant manager." [Doc. 23, p. 1.] If Lee Galles truly believed Chandhok performed poorly as a manager "soon" after his promotion on May 1, it is unlikely that Chandhok would have remained in the job for another 1½ years and been given a raise and more management responsibilities during that period as well, presumably for good performance.

Moreover, this is not a case where there is a documented history of discipline given to Chandhok in relation to his alleged poor performance. Mr. Davis provides affidavit testimony that he received "several reports from other employees" that Chandhok did not treat salespeople well, that he was rude to employees and suppliers, and that he was verbally counseled about his performance on more than one occasion. [Davis. Aff., attached to Lee Galles' Motion.] At least some, if not all, of Mr. Davis' testimony to this effect is arguably impermissible hearsay, and particularly unconvincing since there are no affidavit statements from these other employees who complained about Chandhok and no record evidence showing that Chandhok was, in fact, counseled. Lee Galles also argues that Chandhok did not perform his basic job duties as a manager, and yet provides nothing more than a vague reference to the issuance of purchase orders for suppliers and causing extra work for other employees. [Blakley Aff., attached to Lee Galles' Motion.]

12

There is no documentation of written warnings given to Chandhok, other than a single written note from Davis to Blakley, dated September 14, 2000, asking Blakley to discuss some matters with Chandhok. [Ex. B, attached to Lee Galles' Motion.] The note asks Blakley to counsel Chandhok about "abusing our office people," abusing our suppliers," and his "continued disrespect to his fellow employees." The note further states that this should be a "verbal warning" to Chandhok and that notes from the counseling session with Chandhok should be placed in his file. No notes indicating this counseling session occurred have been provided as part of the evidentiary record.

Further, Chandhok disputes that he was given any kind of warning, written or verbal, about his job performance as a manager. [Chandhok Dep. at 187-88.] He explains that he would get together for a beer with Mr. Blakley rather routinely to discuss how employees were doing, along with vendor/supplier relationships, but that there was no "special meeting" held in reference to the September 2000 memo. He claims that he complained to Mr. Davis that the suppliers were abusing the system by charging Lee Galles for more services on vehicles than needed and/or than were actually provided and that he would give Davis the receipts to prove the abuse. [Id. at 186.] He explained that the suppliers were complaining that the new assistant manager (meaning himself) was a tough guy to work with since he did not allow the abuses, but that Blakley and Davis essentially wanted him to ease off on the suppliers because it was not worth it. [Id. at 186-89.]

In addition, Lee Galles claims that Chandhok violated company policies, including vacation time abuses and unauthorized expenditures. Lee Galles does not identify any policy that allegedly was violated or evidence of the alleged unauthorized expenditures. Further, the only complaint about a vacation time abuse occurred in December 2000. Chandhok disputes this incident and claims that he discussed with Mr. Blakley his need for additional time off to travel to India, that he told Blakley he

13

was willing to take unpaid time off and that Blakley did not refuse the request. This is an obvious factual dispute, not amenable to summary resolution.

It also is implausible that Lee Galles would leave Chandhok in charge of the department for two weeks when Davis, the General Manager, and Blakley, the Used Car Manager, went on vacation in November 2000, if they believed Chandhok was an inadequate and poorly performing manager. Their actions in leaving Chandhok in charge are certainly inconsistent with the earlier September 14, 2000 memo and their affidavit testimony that Chandhok was a poor manager.

Without any documentary evidence of complaints by suppliers and employees concerning Chandhok's alleged management of them, or without more evidence of actual warnings/counseling to Chandhok, Lee Galles' assertions of poor performance simply ring hollow. Moreover, the little record evidence that does exist, along with Chandhok's testimony, raise genuine issues of material fact as to Chandhok's performance.

## 2. *Declining Sales:*

Lee Galles also explains the demotion decision in terms of its declining sales after Chandhok took over the assistant manager position. Indeed, Lee Galles' explanation for the demotion decision is somewhat shifting. While counsel argues that Chandhok's demotion resulted from his poor performance, and defendants provide affidavit testimony attempting to document the inadequate performance, Mr. Davis never actually states that he demoted Chandhok because of poor performance or that he told Chandhok he was being returned to sales due to performance issues. Instead, Davis' affidavit testimony is that he determined the department no longer needed an assistant manager because Blakley was capable of managing it on his own and it did not make "financial sense to have an Assistant Used Vehicle Manager." [Davis Aff. at ¶ 24.] He further states that "[b]ecause

14

the dealership was earning less money, and because Mr. Chandhok himself was earing less money, it was apparent to me that it was in the best interest of all to return Mr. Chandhok to his sales position." [Id. at ¶ 25.] Thus, it is unclear exactly why Chandhok was demoted.

Neither Chandhok's deposition testimony nor Davis' affidavit both make any reference to performance issues being addressed at this demotion meeting, thereby raising further questions about Lee Galles' explanation that Chandhok was not performing adequately. If an employee is demoted for performance problems, it defies common sense to omit any discussion of those issues with the employee.

Lee Galles relies on some sales statistics in the attempt to support Mr. Davis' explanation that sales had slowed when Chandhok took over as an assistant manager. However, these Lee Galles' figures raise more questions than they answer. While Mr. Davis attributes the decline in sales to Chandhok's management, this Court can conceive of a number of other reasonable explanations for varying sales statistics, including number of salespeople working, time of year, interest rates, buyer's incentives, amount of inventory, competition, etc. None of these other factors are addressed by Lee Galles.

In any event, the chart [Ex. C to Davis' Aff.], shows that 104 vehicles were sold in July 1999, as compared to 90 in July 2000, yet Chandhok was the assistant manager in July 1999. In addition, he was still selling cars in July 1999, along with managing. Perhaps the higher figure in 1999 can be attributed, in some part, to Chandhok's sales.

In August 1999 and 2000, the sales were identical. In September 2000, two more cars were sold than in September 1999. In October 2000, 90 cars were sold, as compared with 107 in October 1999. Similar numbers are provided for November and December, but again it is worth noting that

15

Chandhok was gone on vacation for 25 days in December 2000, when 15 fewer vehicles were sold than in the preceding year. It is unclear whether his absence or presence supposedly accounts for the lower sales numbers.

Lee Galles also provides comparative figures of car sales for the following year after Chandhok was gone. In August 2001, sales actually decreased by one car from the time Chandhok managed the department. Similarly, in September 2001, four fewer vehicles were sold than when Chandhok worked at Lee Galles in September 2000. Some of the monthly figures, however, do show that more cars were sold in 2002 than in 2001.

The Court concludes that Lee Galles' statistical evidence is not compelling.

Therefore, based on the record evidence, as well as a lack of evidence supporting Lee Galles' explanations for its demotion decision,[2] the Court finds there are genuine issues of material fact with respect to pretext in this case.[3]

## II. **BREACH OF CONTRACT**

Although his contract claim is not clear, Chandhok appears to allege that Lee Galles breached an express contract with him, in the form of the pay plan that was effective July 1, 2000. [Response, p. 7.] He provides no other contract language, verbal promises or employment practices, on which

---

[2]With respect to the Title VII termination claim, the Court notes that Plaintiff failed to attempt to dispute any of the facts regarding Chandhok's unsatisfactory performance after he returned to the sales position. However, because the Court decides that a genuine issue of material fact remains for a jury to decide regarding the Title VII demotion claim, the Court declines to dismiss the termination claim on the basis that the underlying facts as to both claims are interwoven.

[3]Had Lee Galles asserted that the reason it demoted Chandhok was because Davis wanted to make room for hiring his daughter, this case might very well have been subject to dismissal at summary judgment. An employee can fire an employee for any reason as long as the reason is non-discriminatory, even if the reasons are "unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility." Fisher v. Vassar Coll., 114 F.3d 1332, 1337 (2d Cir. 1997). Thus, giving a benefit to a family member is not illegal.

he purportedly relied. Instead, he argues that it was his understanding "that he could only lose his position as assistant manager if he was [sic] doing his job properly" and that Lee Galles "did nothing to correct that conception." [Id.] Chandhok appears to take the position that the July 1 pay plan constituted a contractual guarantee that he could be demoted only for good cause.

The July 1 pay plan briefly sets forth the terms of payment and further states that "[t]his is not an employment contract and should not be construed to be one." [Ex. C to Plaintiff's Response.] Plaintiff, Blakley and Davis signed the pay plan. Chandhok has not demonstrated the existence of an express contract that provided him any type of guarantee of a continued position in management or the salary that is set forth in the July 1 pay plan. The pay plan does not provide any promises that Chandhok could only be demoted, disciplined or terminated for good cause. Indeed, the pay plan explicitly states that it is not an employment contract.

Having failed to demonstrate the existence of a contract promising Chandhok employment for a certain period or under certain conditions, the Court need not address any question of alleged breach. The contract claim will be dismissed, with prejudice.

## Conclusion

For the reasons stated above, the Court denies Lee Galles' request for summary judgment on the Title VII demotion and termination claims, and grants summary judgment on the contract claim.

IT IS THEREFORE ORDERED that Lee Galles' Motion for Summary Judgment [doc. 22] is GRANTED, in part, and DENIED in part, and that Plaintiff's contract claim is dismissed with prejudice.

                                                      _/s/ Lorenzo F. Garcia_
                                                      Lorenzo F. Garcia
                                                      United States Magistrate Judge